UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO.: 23-22** |
| **JARROD CARTER** | **SECTION: "G"** |

### ORDER AND REASONS

Before the Court is Defendant Jarrod Carter's ("Carter") Motion to Dismiss the Indictment.[1] Carter moves the Court to dismiss both counts of the Indictment, arguing that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied to Carter.[2] The government opposes the motion.[3] Following the Supreme Court's ruling in *United States v. Rahimi*[4] and the Fifth Circuit's ruling in *United States v. Diaz*,[5] the parties submitted supplemental briefing on the issues.[6] In the supplemental brief, Carter concedes that *Diaz* forecloses his facial challenge to Section 922(g)(1), but he argues that the statute is unconstitutional as applied to him.[7] For the reasons discussed in more detail below, Carter's as-applied challenge fails because the government has shown that applying Section 922(g)(1) to Carter "is consistent with this Nation's historical

---

[1] Rec. Doc. 33.

[2] *Id.*

[3] Rec. Doc. 35.

[4] 144 S. Ct. 1889 (2024).

[5] 116 F.4th 458 (5th Cir. 2024).

[6] Rec. Docs. 46, 50.

[7] Rec. Doc. 50.

1

tradition of firearm regulation."[8] Therefore, having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

On February 2, 2023, a federal grand jury in the Eastern District of Louisiana indicted Carter with violations of the Federal Gun Control Act.[9] Count One charges Carter with being a felon in possession of a firearm on January 2, 2023.[10] Count Two charges Carter with being a felon in possession of two firearms on January 3, 2023.[11] The indictment alleges that Carter has three prior felony convictions that prohibit him from possessing firearms.[12] These disqualifying convictions are a May 2019 conviction for possession with intent to distribute 28 grams or less of cocaine, a May 2019 conviction for possession of tramadol, and a February 2020 conviction for possession of a firearm by a convicted felon.[13]

On January 22, 2024, Carter filed the instant motion seeking to dismiss both counts of the Indictment, arguing that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied to Carter.[14] On February 5, 2024, the government filed an opposition to the motion to dismiss.[15]

---

[8] *Diaz*, 116 F.4th at 467 (quoting *New York Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 17 (2022)).

[9] Rec. Doc. 1.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] Rec. Doc. 33.

[15] Rec. Doc. 35.

The Court conducted a hearing on the motion on February 15, 2024.[16] During the hearing, the parties agreed that the Court would reserve ruling on the motion until after the Supreme Court issued its decision in *United States v. Rahimi*. On June 30, 2024, the Supreme Court reversed a ruling of the United States Court of Appeals for the Fifth Circuit on the constitutionality of 18 U.S.C. § 922(g)(8), a statute prohibiting the possession of firearms by persons subject to domestic violence restraining orders.[17]

In July 2024, the Fifth Circuit held oral argument in *United States v. Diaz*, which addressed *Rahimi's* impact on a Second Amendment challenge almost identical to the one raised by Carter.[18] Therefore, with the consent of both parties, the Court continued the trial date to allow time for the Fifth Circuit to rule on this issue and for the parties to submit supplemental briefing.[19] The Fifth Circuit issued its ruling in *Diaz* on September 18, 2024.[20] The government filed a supplemental brief on October 2, 2024,[21] and a notice of supplemental authority on October 7, 2024.[22] Carter filed a supplemental brief on October 30, 2024.[23]

---

[16] Rec. Doc. 38.

[17] *Rahimi*, 143 S.Ct. at 2688.

[18] *Diaz*, 116 F.4th at 458.

[19] Rec. Doc. 43.

[20] *Diaz*, 116 F.4th at 458.

[21] Rec. Doc. 46.

[22] Rec. Doc. 47.

[23] Rec. Doc. 50.

## II. Parties' Arguments

*A.    Carter's Arguments in Support of the Motion*

Carter challenges the constitutionality of Section 922(g)(1), which makes it unlawful for a person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to be in possession of any firearm.[24] Carter argues that the statute is unconstitutional under the Second Amendment as interpreted in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*.[25] Carter asserts that the conduct of possessing a firearm is within the plain text of the Second Amendment, and a ban on a felon's right to possess a firearm is presumed to be unconstitutional under the first part of the *Bruen* test.[26] Therefore, Carter argues that it is the government's burden to show under historical tradition that a select category of persons can be disarmed at the second part of the *Bruen* test.[27]

Even assuming that Section 922(g)(1) is constitutional in some circumstances, Carter submits that it is nevertheless unconstitutional as it is being applied to him.[28] Carter asserts that the government cannot demonstrate that there existed a historical tradition of distinctly similar firearms regulations that permanently disarmed individuals like Carter, who has prior convictions for non-violent drug offenses and possessing a firearm after having been convicted of a drug offense.[29]

---

[24] Rec. Doc. 33-1.

[25] *Id.* at 2–3 (citing *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022)).

[26] *Id.* at 3–5.

[27] *Id.*

[28] *Id.* at 5.

[29] *Id.*

B.   *The Government's Arguments in Opposition to the Motion*

In opposition, the government points out that virtually every court in the nation to address the issue has rejected the same arguments Carter is making.[30] The government also points out that for decades the Fifth Circuit has consistently upheld the constitutionality of 18 U.S.C. § 922(g)(1).[31]

The government submits that the Court can reject Carter's challenge on the basis of binding precedent alone, but even if the Court were inclined to review the text of the Second Amendment and its historical context, the government submits that Carter's challenge would still fail.[32] The government asserts that the Second Amendment's text does not prevent Congress from banning firearm possession by felons, and Section 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation.[33] The government asserts that legislatures have historically had wide latitude to exclude felons from the political community, and Carter was not part of the "people" whose right to bear arms is protected by the Second Amendment.[34] The government contends that two types of historical laws support Section 922(g)(1)'s constitutionality: (1) laws authorizing capital punishment and estate forfeiture for felons, and (2) laws disarming those deemed untrustworthy based on lack of adherence to the rule of law.[35] For these reasons, the government argues that the motion to dismiss should be denied.[36]

---

[30] Rec. Doc. 35 at 6.

[31] *Id.* at 8.

[32] *Id.* at 13.

[33] *Id.*

[34] *Id.* at 13–14.

[35] *Id.* at 17.

[36] *Id.* at 19.

C.    *The Government's Arguments in Further Opposition to the Motion*

In the supplemental brief, the government addresses the impact of the Fifth Circuit's ruling in *Diaz*.[37] The government concedes that the Fifth Circuit rejected the government's prior argument that *Bruen* did not clearly undermine existing Fifth Circuit caselaw.[38] The government also concedes that the Fifth Circuit rejected the government's prior argument that felons are not part of "the people" as the term is used in the Second Amendment.[39]

Because *Diaz* held there are some circumstances where Section 922(g)(1) is constitutional, the government points out that Carter's "facial" Second Amendment challenge fails.[40] The government contends that disarming Carter based on his convictions for possession with intent to distribute 28 grams or less of cocaine, possession of tramadol, and felon in possession of a firearm is consistent with the historical tradition of firearms regulation in the United States.[41] The government concedes that there was no founding-era law prohibiting drug trafficking because most illegal drugs sold today did not even exist at the time of the founding.[42] However, the government points out that the Supreme Court has warned against being too formalistic in "historical analogue" comparisons.[43]

The government posits that the central question is "whether founding-era legislatures would have understood their powers to include the ability to pass laws to combat a similar problem,

---

[37] Rec. Doc. 46.

[38] *Id.* at 6.

[39] *Id.*

[40] *Id.* at 7.

[41] *Id.*

[42] *Id.* at 8.

[43] *Id.* (quoting *Bruen*, 597 U.S. at 27).

6

including laws imposing severe criminal punishments and/or estate forfeiture."[44] Considering these principles, the government submits that the country's history and tradition is not offended by disarming drug dealers.[45] The government points to founding-era legislation criminalizing the trafficking of contraband, which aimed to curb marketplaces trafficking in illicit goods.[46] Additionally, the government points to the significant post-ratification history showing that "laws prohibiting convicted drug dealers from possessing guns are ubiquitous, longstanding, and near-universally supported in this country."[47] Therefore, the government argues that Carter's drug crimes, standing alone, permit felon dispossession.[48] The government points out that Carter also has a prior conviction for being a felon in possession of a firearm, where he was arrested while still serving probation for the prior felony drug offenses.[49] For these reasons, the government asserts that Carter's as-applied challenge should be rejected.[50]

### D. Carter's Arguments in Further Support of the Motion

In the supplemental brief, Carter concedes that *Diaz* forecloses his facial challenge to Section 922(g)(1), but he argues that the statute is unconstitutional as applied to him.[51] Carter notes that the predicate offense in *Diaz* was a crime of theft, which carried the punishment of death or

---

[44] *Id.* at 9.

[45] *Id.*

[46] *Id.* at 10 (citing 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619*, 130 (1819); *An Act to Establish the Post-Office and Post Roads within the United States*, § 17 1 Stat. 232, 237 (1792); *An Act for the Punishment of Certain Crimes Against the United States*, §§ 115, 1 Stat. 112, 115 (1790)).

[47] *Id.*

[48] *Id.* at 11.

[49] *Id.*

[50] *Id.*

[51] Rec. Doc. 50 at 1–2.

estate forfeiture at the time of the nation's founding.[52] Carter asserts that the government mistakenly invokes the post-ratification history to bolster its argument that laws dispossessing drug felons are longstanding.[53] Carter points out that the earliest version of the felon in possession statute was enacted in 1938 and was expanded in 1961.[54] Carter submits that his prior convictions for drug trafficking are different than the violent offenses considered by the Supreme Court in *Rahimi*.[55] Carter contends that the government has failed to identify a relevantly similar historical analogue to drug trafficking, and for this reason the Indictment should be dismissed.[56]

### III. Applicable Law

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Among other defenses, objections or requests available under Federal Rule of Criminal Procedure 12(b), a party may move to dismiss an indictment based on "a defect in the indictment," including "failure to state an offense."[57] "The propriety of granting a motion to dismiss an indictment . . . is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. . . . If a question of law is involved, then consideration of the motion is generally proper."[58]

---

[52] *Id.* at 3.

[53] *Id.* at 5.

[54] *Id.*

[55] *Id.* at 7.

[56] *Id.* at 8.

[57] Fed. R. Crim. P. 12(b)(3)(B)(v).

[58] *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (internal citations omitted).

8

## **IV. Analysis**

Carter initially raised both a facial challenge and an as-applied challenge to 18 U.S.C. § 922(g)(1). "A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications. So classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy,' but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation."[59] "When a litigant brings both as-applied and facial challenges, [courts] generally decide the as-applied challenge first because it is the narrower consideration."[60] In the supplemental brief, Carter concedes that *Diaz* forecloses his argument that Section 922(g)(1) is facially unconstitutional, but Carter argues that the statute is unconstitutional as applied to him.[61] Before addressing whether the statute is unconstitutional as applied, the Court lays out the relevant Second Amendment jurisprudence on the issue.

### A.     *Relevant Second Amendment Jurisprudence*

Section 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition." Carter argues that this statute violates the Second Amendment because it infringes on his right to possess firearms.

The Second Amendment states, "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." In *District of Columbia v. Heller*, the Supreme Court struck down "a District of Columbia prohibition on the

---

[59] *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019).

[60] *Buchanan v. Alexander*, 919 F.3d 847, 852 (5th Cir. 2019).

[61] Rec. Doc. 50.

possession of usable handguns in the home," finding that the statute violated the Second Amendment.[62] The Supreme Court explained "that the Second Amendment . . . codified a pre-existing right" for individuals to "possess and carry weapons in case of confrontation."[63] However, the Court recognized that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited," and can be subject to certain restrictions, such as the "longstanding prohibitions on the possession of firearms by felons and the mentally ill."[64]

Following *Heller*, the Fifth Circuit "adopted a two-step inquiry for analyzing laws that might impact the Second Amendment."[65] Both before and after *Heller*, the Fifth Circuit repeatedly held that Section 922(g)(1) does not violate the Second Amendment.[66] However, this precedent pre-dates the Supreme Court's recent opinion in *New York State Rifle & Pistol Ass'n v. Bruen*.

*Bruen* abrogated the two-step approach that the Fifth Circuit and other courts had adopted following *Heller*.[67] The Supreme Court held:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the

---

[62] 554 U.S. 570, 573 (2008).

[63] *Id.* at 592.

[64] *Id.* at 626.

[65] *United States v. McGinnis*, 956 F.3d 747, 753 (5th Cir. 2020) (internal citations and quotation marks omitted). The two-step inquiry proceeded as follows:

> First, we ask whether the conduct at issue falls within the scope of the Second Amendment right. To make that determination, we look to whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee. If the burdened conduct falls outside the scope of the Second Amendment, then the law is constitutional and the inquiry is over. Otherwise, we proceed to step two, where we must determine and apply the appropriate level of means-ends scrutiny—either strict or intermediate.

*Id.* at 754 (internal citations and quotation marks omitted).

[66] *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004); *United States v. Darrington*, 351 F.3d 632, 633–34 (5th Cir. 2003); *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001).

[67] *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022).

government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[68]

However, Justices who joined the majority's decision in *Bruen* underscored that the opinion does not overturn the longstanding prohibitions on firearm possessions by felons.[69]

Recently, in *United States v. Rahimi*, an eight-justice majority of the Supreme Court upheld the constitutionality of 18 U.S.C. § 922(g)(8), a statute prohibiting the possession of firearms by persons subject to domestic violence restraining orders.[70] The Court found that Section 922(g)(8) "fits comfortably" in the Nation's tradition of "preventing individuals who threaten physical harm to others from misusing firearms."[71] The Court reasoned that surety laws and "going armed" laws are appropriate historical analogues to Section 922(g)(8).[72] Surety laws required individuals to post bonds whenever there was a "probable ground to suspect of future misbehaviour," and they were used to "prevent all forms of violence, including spousal abuse" and the misuse of firearms.[73] Going armed laws prohibited "riding or going armed, with dangerous or unusual weapons, to terrify the good people of the

---

[68] *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

[69] *Id.* at 81 (Kavanaugh, J., concurring) (Roberts, J., joining) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.") (quoting *Heller*, 554 U.S. at 626); *Id.* at 72 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller or McDonald v. Chicago* about restrictions that may be imposed on the possession or carrying of guns.").

[70] *Rahimi*, 144 S. Ct. at 1903.

[71] *Id.* at 1897.

[72] *Id.* at 1899–1900.

[73] *Id.*

11

land."[74]

Like Section 922(g)(8), the majority found that surety and going armed laws were used "to mitigate demonstrated threats of physical violence."[75] The Court also reasoned that Section 922(g)(8)'s burden on the Second Amendment is comparable to the burdens imposed by surety and going armed laws because those laws did not "broadly restrict arms use by the public generally."[76] The Court explained that violating these laws could result in imprisonment, and that "if imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible."[77] The Court concluded that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others."[78]

Following the Supreme Court's opinion in *Rahimi*, the Fifth Circuit upheld the constitutionality of 18 U.S.C. § 922(g)(1), the felon in possession statute also at issue here.[79] In *United States v. Diaz*, the Fifth Circuit applied *Bruen*'s two-part test to Section 922(g)(1).[80] At the first step, the Fifth Circuit held that, despite Diaz's felon status, he was a member of "the people" as the term is used in the Second Amendment.[81] At the second

---

[74] *Id.* at 1900.

[75] *Id.* at 1901.

[76] *Id.*

[77] *Id.* at 1902.

[78] *Id.*

[79] *Diaz*, 116 F.4th at 458.

[80] *Id.* at 466.

[81] *Id.*

step, the Fifth Circuit found that Section 922(g)(1), as applied in Diaz's case, is "consistent with the Nation's historical tradition" of regulating firearm use.[82]

The Fifth Circuit noted that Diaz had a previous felony theft conviction, and numerous colonial-era laws "severely punish[ed] people like Diaz who had been convicted of theft," often by way of the death penalty.[83] The Fifth Circuit found that these capital punishment laws were similar in purpose to Section 922(g)(1)'s gun restriction—both laws sought to "deter violence and lawlessness."[84] The Fifth Circuit also found that founding-era capital punishment laws and Section 922(g)(1) carried a similar approach by permanently punishing offenders as a result of their serious crime.[85]

The Fifth Circuit also relied on the going armed laws common to the founding era, which authorized permanent dispossession of firearms for people that carried them publicly in a threatening or offensive manner.[86] The Fifth Circuit reasoned that "[t]he size of these laws' burden on the right to bear arms is comparable to that of [Section] 922(g)(1). They both provide for permanent arms forfeiture as a penalty."[87] Accordingly, the Fifth Circuit found that "[i]mposing permanent disarmament as a punishment is [] within our Nation's history and tradition."[88] For these reasons, the Fifth Circuit concluded that Section 922(g)(1) is constitutional facially and as

---

[82] *Id.*

[83] *Id.* at 468–69.

[84] *Id.* at 469.

[85] *Id.* at 469.

[86] *Id.* at 470.

[87] *Id.* at 471.

[88] *Id.* at 471–72.

13

applied to Diaz.[89]

B.   *Whether Section 922(g)(1) is Unconstitutional as Applied to Carter*

Carter concedes that *Diaz* forecloses his argument that Section 922(g)(1) is facially unconstitutional, but Carter argues that the statute is unconstitutional as applied to him.[90] "The plain text of the Second Amendment covers the conduct prohibited by [Section] 922(g)(1)."[91] Therefore, the first step of the *Bruen* analysis is satisfied and "[t]he burden thus shifts to the government to demonstrate that regulating [Carter's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'"[92] "To satisfy this burden, the government must 'identify a well-established and representative historical analogue, not a historical twin.'"[93] "Evidence must be 'relevantly similar' to the challenged law."[94]  "In assessing similarity, [the Court] consider[s] 'whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified.'"[95]

Carter's criminal history includes convictions for possession with intent to distribute 28 grams or less of cocaine, possession of tramadol, and possession of a firearm by a convicted felon.[96] To survive Carter's as-applied challenge under the Second Amendment, "the government must demonstrate that the Nation has a longstanding tradition of disarming someone with a

---

[89] *Id.* at 470.

[90] Rec. Doc. 50.

[91] *Diaz*, 116 F.4th at 467.

[92] *Id.* (quoting *Bruen*. 597 U.S. at 24).

[93] *Id.* (quoting *Bruen*. 597 U.S. at 30).

[94] *Id.* (quoting *Bruen*. 597 U.S. at 29).

[95] *Id.* (quoting *Bruen*. 597 U.S. at 29).

[96] Rec. Doc. 1.

criminal history analogous to this."[97] There are no founding-era laws prohibiting drug-trafficking, as many of the illegal drugs distributed today did not even exist at the time of the Nation's founding. However, "[t]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791."[98] The government need not identify a "historical twin," it need only identify a "historical analogue."[99]

To meet this burden, the government primarily relies on founding-era laws criminalizing possessing and/or trafficking contraband.[100] The government cites a 1748 Virginia law authorizing imposition of the death penalty for trading of a stolen horse, a 1792 federal law authorizing imposition of the death penalty for mail theft, and a 1790 federal law that authorized imposition of the death penalty for the making or trading of counterfeit and forged securities.[101] As the Fifth Circuit has reasoned, if capital punishment was a permissible response to possessing and/or trafficking contraband, "then the lesser restriction of permanent disarmament that [Section] 922(g)(1) imposes is also permissible."[102] Accordingly, the founding-era laws cited by the government are "relevantly similar" evidence "establish[ing] that our country has a historical tradition of severely punishing people like [Carter] who have been convicted" of possessing and trafficking contraband.[103]

---

[97] *Diaz*, 116 F.4th at 467.

[98] *Rahimi*, 144 S. Ct. at 1897–98.

[99] *Id.* at 1903.

[100] Rec. Doc. 46 at 10 (citing 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619*, 130 (1819); *An Act to Establish the Post-Office and Post Roads within the United States*, § 17 1 Stat. 232, 237 (1792); *An Act for the Punishment of Certain Crimes Against the United States*, §§ 115, 1 Stat. 112, 115 (1790)).

[101] *Id.*

[102] *Diaz*, 116 F.4th at 469.

[103] *Id.* at 470.

15

The government also cites founding-era "going armed" laws, which allowed for the disarming of individuals convicted of serious crimes because they may pose a risk of violence or other danger to public safety.[104] In *Rahimi*, the Supreme Court recognized that "[f]rom the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others."[105] These founding-era laws recognize that this conduct "disrupted the public order . . . and le[d] almost necessarily to actual violence."[106]

Carter submits that his prior convictions for drug trafficking are different than the violent offenses considered by the Supreme Court in *Rahimi*.[107] However, in *Diaz*, the Fifth Circuit held that Section 922(g)(1) is constitutional as applied to an individual previously convicted of theft, which the court recognized did "not inherently involve a threat of violence."[108] Additionally, application of the felon-in-possession statute to drug criminals aims to address a *risk* of violence. Congress has long recognized "that drugs and guns are a dangerous combination."[109] "Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed."[110] "This history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons."[111] Therefore, the government has met its burden of showing that

---

[104] Rec. Doc. 46 at 9.

[105] *Rahimi*, 144 S. Ct. at 1899.

[106] *Id.*

[107] Rec. Doc. 50 at 7.

[108] *Diaz*, 116 F.4th at 471, n.5.

[109] *Smith v. United States*, 508 U.S. 223, 240 (1993) ("In 1989, 56 percent of all murders in New York City were drug related; during the same period, the figure for the Nation's Capital was as high as 80 percent.").

[110] *United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024).

[111] *Id.*

16

applying Section 922(g)(1) to Carter "is consistent with this Nation's historical tradition of firearm regulation."[112]

Finally, the Court notes that this holding is consistent with rulings from courts across the country who have addressed the constitutionality of Section 922(g)(1) as applied to defendants with predicate drug possession and trafficking convictions.[113] In 2023, two district judges sitting in the Fifth Circuit held that Section 922(g)(1) is unconstitutional.[114] Both of those cases are currently pending on appeal. The analysis in both of those cases was based on the Fifth Circuit's decision in *Rahimi*, which was subsequently reversed by the Supreme Court. Therefore, the Court finds these opinions unpersuasive in light of the more recent authority from the Supreme Court and Fifth Circuit relied on by the Court herein.

---

[112] *Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 17).

[113] *See Jackson*, 110 F.4th at 1125–29 (holding Section 922(g)(1) constitutional as applied to a defendant with predicate sale of controlled substance offense); *United States v. Canales*, 702 F. Supp. 3d 322, 327–32 (E.D. Pa. 2023) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate drug trafficking convictions); *United States v. Goins*, 647 F. Supp. 3d 538, 554–55 (E.D. Ky. 2022) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate convictions for DUI and drug possession); *United States v. Wilson*, No. CR 22-238, 2024 WL 4436637, at *5 (E.D. La. Oct. 6, 2024) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate convictions for drug possession and firearm convictions); *United States v. Pearson*, No. 22-CR-271, 2023 WL 6216527, at *3 (E.D. Pa. Sept. 25, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug-distribution and firearm convictions); *United States v. Blackshear*, No. 23-CR-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug and firearm convictions); *United States v. Reichenbach*, No. 4:22-CR-57, 2023 WL 5916467, at *8–10 (M.D. Pa. Sept. 11, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug distribution convictions).

[114] *See United States v. Leblanc*, No. 23-45, 2023 WL 8756694, at *1 (M.D. La. Dec. 19, 2023) (Jackson, J.); *United States v. Bullock*, 679 F.Supp. 3d 501 (S.D. Miss. 2023) (Reeves, J.).

## V. Conclusion

For the reasons discussed above, the Court finds that Section 922(g)(1) is constitutional both on its face and as applied to Carter. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Jarrod Carter's Motion to Dismiss the Indictment[115] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this __8th__ day of November, 2024.

*[Signature: Nannette Jolivette Brown]*

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[115] Rec. Doc. 33.